Robert V. Prongay (SBN 270796)
Charles Linehan (SBN 307439)
Pavithra Rajesh (SBN 323055)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff Reena Saintjermain*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REENA SAINTJERMAIN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FLUIDIGM CORPORATION, STEPHEN CHRISTOPHER LINTHWAITE, and VIKRAM JOG, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR THE VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Reena Saintjermain ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Fluidigm Corporation ("Fluidigm" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Fluidigm; and (c) review of other publicly available information concerning Fluidigm.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Fluidigm securities between February 7, 2019 and November 5, 2019, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Fluidigm manufactures and markets products and services that are used by researchers to study health and disease, identify biomarkers, and accelerate the development of therapies. The Company uses proprietary CyTOF and microfluidics technologies to develop its end-to-end solutions.

3.      On August 1, 2019, Fluidigm reported second quarter 2019 revenue of $28.2 million, well below analysts' expectations of $32 million, citing weakness in its microfluidics segment.

4.      On this news, the Company's share price fell $4.10, or 34%, to close at $8.05 per share on August 2, 2019, on unusually heavy trading volume.

5.      On November 5, 2019, after the market closed, Fluidigm reported that third quarter 2019 revenue declined 8.5% year-over-year primarily due to mass cytometry instrument sales.

6.      On this news, the Company's share price fell $2.60, or 51%, to close at $2.51 per share on November 6, 2019, on unusually heavy trading volume.

7.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business,

operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Fluidigm was experiencing longer sales cycles; (2) that, as a result, Fluidigm's revenue was reasonably likely to decline; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.     Plaintiff Reena Saintjermain, as set forth in the accompanying certification, incorporated by reference herein, purchased Fluidigm securities during the Class Period, and

---

CLASS ACTION COMPLAINT

2

1  suffered damages as a result of the federal securities law violations and false and/or misleading

2  statements and/or material omissions alleged herein.

3      14.     Defendant Fluidigm is incorporated under the laws of Delaware with its principal

4  executive offices located in South San Francisco, California. Fluidigm's common stock trades on

5  the NASDAQ exchange under the symbol "FLDM."

6      15.     Defendant Stephen Christopher Linthwaite ("Linthwaite") was the Company's Chief

7  Executive Officer ("CEO") at all relevant times.

8      16.     Defendant Vikram Jog ("Jog") was the Company's Chief Financial Officer ("CFO")

9  at all relevant times.

10     17.     Defendants Linthwaite and Jog (collectively the "Individual Defendants"), because

11 of their positions with the Company, possessed the power and authority to control the contents of

12 the Company's reports to the SEC, press releases and presentations to securities analysts, money

13 and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were

14 provided with copies of the Company's reports and press releases alleged herein to be misleading

15 prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance

16 or cause them to be corrected.  Because of their positions and access to material non-public

17 information available to them, the Individual Defendants knew that the adverse facts specified

18 herein had not been disclosed to, and were being concealed from, the public, and that the positive

19 representations which were being made were then materially false and/or misleading.   The

20 Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

23     18.     Fluidigm manufactures and markets products and services that are used by

24 researchers to study health and disease, identify biomarkers, and accelerate the development of

25 therapies. The Company uses proprietary CyTOF and microfluidics technologies to develop its end-

26 to-end solutions.

27

28

**Materially False and Misleading**
**Statements Issued During the Class Period**

19.     The Class Period begins on February 7, 2019. On that day, Fluidigm announced its fourth quarter and full year 2018 financial results in a press release that stated, in relevant part:

**Financial Highlights**

*Fourth Quarter 2018*

- Total revenue increased 17 percent to $32.3 million from $27.7 million in the fourth quarter of 2017, with mass cytometry revenue growth of 48 percent compared to the year ago period.

- GAAP net loss was $14.8 million, compared with a GAAP net loss of $10.5 million for the fourth quarter of 2017. GAAP net loss was higher in the fourth quarter of 2018 primarily due to non-cash interest associated with the convertible debt exchange in 2018 and the impact of a favorable litigation settlement in the fourth quarter of 2017.

- Non-GAAP net loss was $2.4 million, compared with a $3.0 million non-GAAP net loss for the fourth quarter of 2017.

*Full Year 2018*

- Total revenue increased 11 percent to $113.0 million from $101.9 million in full year 2017.

- GAAP net loss was $59.0 million, compared with a GAAP net loss of $60.5 million for the full year 2017.

- Non-GAAP net loss was $20.7 million, compared with a $30.2 million non-GAAP net loss for the full year 2017.

*             *             *

**2019 Guidance**

| Consumables pull-through | 2019 ($000) |
| --- | --- |
| Mass cytometry | $73 – $78 |
| Biomark/Biomark HD and EP1 | $44 - $50 |
| Access Array and Juno | $25 - $30 |

**First Quarter 2019 Guidance**

- Total revenue of $28 million to $31 million.

- GAAP operating expenses of $29.5 million to $30.5 million.

- Non-GAAP operating expenses of $26.5 million to $27.5 million excluding stock-based compensation and depreciation and amortization expenses of approximately $2 million and $1 million, respectively.

CLASS ACTION COMPLAINT

4

- Total cash outflow of $20 million to $22 million, including total annual incentive compensation and retention bonus payments of $10.8 million, and a semi-annual interest payment of $2.8 million.

20.     On March 18, 2019, the Company filed its annual report on Form 10-K for the period ended December 31, 2019, affirming the previously reported financial results. The report also generally warned of sales fluctuations, stating in relevant part:

> **Our financial results and revenue growth rates have varied significantly from quarter-to-quarter and year-to-year due to a number of factors, and a significant variance in our operating results or rates of growth, if any, could lead to substantial volatility in our stock price.**
>
> Our revenue, results of operations, and revenue growth rates have varied in the past and may continue to vary significantly from quarter-to-quarter or year-to-year. We may experience substantial variability in our product mix from period-to-period as revenue from sales of our instruments relative to sales of our consumables may fluctuate or deviate significantly from expectations. For example, our revenue declined year-over-year in 2016 compared to 2015, and in 2017 compared to 2016. In 2018, we returned to revenue growth, but we may not be able to achieve similar revenue growth in future periods. We are also increasingly dependent on our mass cytometry business, which is very capital intensive. Variability in our quarterly or annual results of operations, mix of product revenue, including any decline in our mass cytometry revenue, or variability in rates of revenue growth, if any, may lead to volatility in our stock price as research analysts and investors respond to these fluctuations. *These fluctuations are due to numerous factors that are difficult to forecast, including: fluctuations in demand for our products; changes in customer budget cycles and capital spending; seasonal variations in customer operations; tendencies among some customers to defer purchase decisions to the end of the quarter; the large unit value of our systems, particularly our proteomics systems; changes in our pricing and sales policies or the pricing and sales policies of our competitors; our ability to design, manufacture, market, sell, and deliver products to our customers in a timely and cost-effective manner; fluctuations or reductions in revenue from sales of legacy instruments that may have contributed significant revenue in prior periods; quality control or yield problems in our manufacturing operations; our ability to timely obtain adequate quantities of the materials or components used in our products, which in certain cases are purchased through sole and single source suppliers; new product introductions and enhancements by us and our competitors; unanticipated increases in costs or expenses; our complex, variable and, at times, lengthy sales cycle; global economic conditions; and fluctuations in foreign currency exchange rates. Additionally, we have certain customers who have historically placed large orders in multiple quarters during a calendar year. A significant reduction in orders from one or more of these customers could adversely affect our revenue and operating results, and if these customers defer or cancel purchases or otherwise alter their purchasing patterns, our financial results and actual results of operations could be significantly impacted. Other unknown or unpredictable factors also could harm our results.*
>
> The foregoing factors, as well as other factors, could materially and adversely affect our quarterly and annual results of operations and rates of revenue growth, if any. We have experienced significant revenue growth in the past but we may not achieve similar growth rates in future periods. . . .

(Emphasis added.)

21.     On May 2, 2019, Fluidigm announced its first quarter 2019 financial results in a press release that stated, in relevant part:

**Financial Highlights**

*First Quarter 2019*

- Total revenue increased 19 percent to $30.1 million from $25.2 million in the first quarter of 2018, with mass cytometry revenue growth of 110 percent compared to the year ago period.

- GAAP net loss was $25.5 million, compared with a GAAP net loss of $13.2 million for the first quarter of 2018. GAAP net loss was higher in the first quarter of 2019 primarily due to a loss of $9.0 million associated with extinguishment of $150 million principal value of convertible debt, as well as higher employee-related and business development expenses.

- Non-GAAP net loss was $8.2 million, compared with a $6.3 million non-GAAP net loss for the first quarter of 2018.

*              *              *

*Revenue by market:*

- Mass cytometry revenue increased 110 percent to $18.8 million from $9.0 million in the prior year period. Mass cytometry product revenue increased 134 percent to $15.5 million from $6.6 million in the prior year due to higher sales of instruments and consumables.

- Microfluidics revenue decreased 30 percent to $11.4 million from $16.3 million in the prior year period. Microfluidics product revenue decreased 32 percent to $9.4 million from $13.9 million in the prior year period due to lower sales of instruments and consumables.

*              *              *

**Second Quarter 2019 Guidance**

- Total revenue of $28 million to $31 million.

- GAAP operating expenses of $29.5 million to $30.5 million.

- Non-GAAP operating expenses of $25.5 million to $26.5 million excluding stock-based compensation, including severance and depreciation and amortization expenses of approximately $3 million and $1 million, respectively.

- Total cash outflow of $4 million to $6 million.

CLASS ACTION COMPLAINT

6

22.    On May 7, 2019, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2019, affirming the previously reported financial results. It also stated, in relevant part:

**Our financial results and revenue growth rates have varied significantly from quarter-to-quarter and year-to-year due to a number of factors, and a significant variance in our operating results or rates of growth, if any, could lead to substantial volatility in our stock price.**

Our revenue, results of operations, and revenue growth rates have varied in the past and may continue to vary significantly from quarter-to-quarter or year-to-year. We may experience substantial variability in our product mix from period-to-period as revenue from sales of our instruments relative to sales of our consumables may fluctuate or deviate significantly from expectations. For example, our revenue declined year-over-year in 2016 compared to 2015, and in 2017 compared to 2016. In 2018, we returned to revenue growth, but we may not be able to achieve similar revenue growth in future periods. We are also increasingly dependent on our mass cytometry business, which is very capital intensive. Variability in our quarterly or annual results of operations, mix of product revenue, including any decline in our mass cytometry revenue, or variability in rates of revenue growth, if any, may lead to volatility in our stock price as research analysts and investors respond to these fluctuations. ***These fluctuations are due to numerous factors that are difficult to forecast, including: fluctuations in demand for our products; changes in customer budget cycles and capital spending; seasonal variations in customer operations; tendencies among some customers to defer purchase decisions to the end of the quarter; the large unit value of our systems, particularly our proteomics systems; changes in our pricing and sales policies or the pricing and sales policies of our competitors; our ability to design, manufacture, market, sell, and deliver products to our customers in a timely and cost-effective manner; fluctuations or reductions in revenue from sales of legacy instruments that may have contributed significant revenue in prior periods; quality control or yield problems in our manufacturing operations; our ability to timely obtain adequate quantities of the materials or components used in our products, which in certain cases are purchased through sole and single source suppliers; new product introductions and enhancements by us and our competitors; unanticipated increases in costs or expenses; our complex, variable and, at times, lengthy sales cycle; global economic conditions; and fluctuations in foreign currency exchange rates. Additionally, we have certain customers who have historically placed large orders in multiple quarters during a calendar year. A significant reduction in orders from one or more of these customers could adversely affect our revenue and operating results, and if these customers defer or cancel purchases or otherwise alter their purchasing patterns, our financial results and actual results of operations could be significantly impacted. Other unknown or unpredictable factors also could harm our results.***

The foregoing factors, as well as other factors, could materially and adversely affect our quarterly and annual results of operations and rates of revenue growth, if any. We have experienced significant revenue growth in the past but we may not achieve similar growth rates in future periods.

23.    The above statements identified in ¶¶ 19-22 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and

---

CLASS ACTION COMPLAINT                                                                    7

prospects.   Specifically, Defendants failed to disclose to investors: (1) that Fluidigm was experiencing longer sales cycles; (2) that, as a result, Fluidigm's revenue was reasonably likely to decline; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

24.     The truth began to emerge on August 1, 2019 when Fluidigm reported second quarter 2019 revenue of $28.2 million, well below analysts' expectations of $32 million, citing weakness in its microfluidics segment. That day, after the market closed, Fluidigm announced its second quarter 2019 financial results in a press release that stated, in relevant part:

*Second Quarter 2019*

- Total revenue increased 7 percent to $28.2 million from $26.4 million in the second quarter of 2018, with mass cytometry revenue growth of 28 percent compared to the year ago period.

- GAAP net loss was $13.8 million, compared with a GAAP net loss of $16.2 million for the second quarter of 2018.

- Non-GAAP net loss was $7.1 million, compared with a $6.8 million non-GAAP net loss for the second quarter of 2018.

*          *          *

*Revenue by market:*

- Mass cytometry revenue increased 28 percent to $17.5 million from $13.7 million in the prior year period. Mass cytometry product revenue increased 28 percent to $14.4 million from $11.3 million in the prior year due to higher sales of both instruments and consumables.

- Microfluidics revenue decreased 16 percent to $10.7 million from $12.8 million in the prior year period. Microfluidics product revenue decreased 16 percent to $8.9 million from $10.5 million in the prior year period due to lower sales of both instruments and consumables.

*          *          *

**Third Quarter 2019 Guidance**

- Total revenue of $27 million to $30 million.

- GAAP operating expenses of $26 million to $27 million.

- Non-GAAP operating expenses of $30 million to $31 million excluding stock-based compensation, and depreciation and amortization expenses of approximately

---

CLASS ACTION COMPLAINT                                                                                      8

- $3.5 million and $1 million, respectively.

- Total cash outflow of $7 million to $9 million.

25.     On this news, the Company's share price fell $4.10, or 34%, to close at $8.05 per share on August 2, 2019, on unusually heavy trading volume.

26.     On August 7, 2019, Fluidigm filed its quarterly report on Form 10-Q for the period ended June 30, 2019, affirming the previously reported financial results. It also stated, in relevant part:

> Our financial results and revenue growth rates have varied significantly from quarter-to-quarter and year-to-year due to a number of factors, and a significant variance in our operating results or rates of growth, if any, could lead to substantial volatility in our stock price.
>
> Our revenue, results of operations, and revenue growth rates have varied in the past and may continue to vary significantly from quarter-to-quarter or year-to-year. We may experience substantial variability in our product mix from period-to-period as revenue from sales of our instruments relative to sales of our consumables may fluctuate or deviate significantly from expectations. For example, our revenue declined year-over-year in 2016 compared to 2015, and in 2017 compared to 2016. In 2018, we returned to revenue growth, but we may not be able to achieve similar revenue growth in future periods. We are also increasingly dependent on our mass cytometry business, which is very capital intensive. Variability in our quarterly or annual results of operations, mix of product revenue, including any decline in our mass cytometry revenue, or variability in rates of revenue growth, if any, may lead to volatility in our stock price as research analysts and investors respond to these fluctuations. ***These fluctuations are due to numerous factors that are difficult to forecast, including: fluctuations in demand for our products; changes in customer budget cycles and capital spending; seasonal variations in customer operations; tendencies among some customers to defer purchase decisions to the end of the quarter; the large unit value of our systems, particularly our proteomics systems; changes in our pricing and sales policies or the pricing and sales policies of our competitors; our ability to design, manufacture, market, sell, and deliver products to our customers in a timely and cost-effective manner; fluctuations or reductions in revenue from sales of legacy instruments that may have contributed significant revenue in prior periods; quality control or yield problems in our manufacturing operations; our ability to timely obtain adequate quantities of the materials or components used in our products, which in certain cases are purchased through sole and single source suppliers; new product introductions and enhancements by us and our competitors; unanticipated increases in costs or expenses; our complex, variable and, at times, lengthy sales cycle; global economic conditions; and fluctuations in foreign currency exchange rates. Additionally, we have certain customers who have historically placed large orders in multiple quarters during a calendar year. A significant reduction in orders from one or more of these customers could adversely affect our revenue and operating results, and if these customers defer or cancel purchases or otherwise alter their purchasing patterns, our financial results and actual results of operations could be significantly impacted. Other unknown or unpredictable factors also could harm our results.***

The foregoing factors, as well as other factors, could materially and adversely affect our quarterly and annual results of operations and rates of revenue growth, if any. We have experienced significant revenue growth in the past but we may not achieve similar growth rates in future periods.

27.     The above statements identified in ¶¶ 24-26 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose to investors: (1) that Fluidigm was experiencing longer sales cycles; (2) that, as a result, Fluidigm's revenue was reasonably likely to decline; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

28.     On November 5, 2019, after the market closed, Fluidigm reported that third quarter 2019 revenue declined 8.5% year-over-year primarily due to mass cytometry instrument sales. In a press release, the Company stated, in relevant part:

**Financial Highlights**

- Third quarter revenue decreased 8.5 percent to $26.5 million from $29.0 million, with consumables revenue growth of 11 percent, compared to the third quarter of 2018.

- Year-to-date total revenue increased 5 percent to $84.8 million, and mass cytometry revenue increased 28 percent to $51.8 million, compared to the same period in 2018.

- GAAP net loss for the quarter was $12.9 million, compared with a GAAP net loss of $14.8 million for the third quarter of 2018.

- Non-GAAP net loss was $6.2 million for the quarter, compared with a $5.2 million non-GAAP net loss for the third quarter of 2018.

"***Total revenue in the third quarter declined primarily due to mass cytometry instrument sales in the Americas***, partially offset by growth in mass cytometry and microfluidics consumables.  Double-digit recurring revenue growth from consumables and service, as well as disciplined financial management, were highlights for the quarter," said Chris Linthwaite, President and CEO.

\*     \*     \*

*Revenue by market:*

- Mass cytometry revenue decreased 13 percent to $15.6 million from $17.9 million in the prior year period. ***Mass cytometry product revenue decreased***

> *23 percent to $11.8 million from $15.2 million in the prior year primarily due to lower sales of instruments partially offset by higher sales of consumables.*

- Microfluidics revenue decreased 2 percent to $10.9 million from $11.1 million in the prior year period. Microfluidics product revenue decreased 1 percent to $8.9 million from $9.0 million in the prior year period primarily due to lower sales of instruments partially offset by higher sales of consumables.

29.     The same day, Fluidigm held a conference call with investors and analysts to discuss the results. During the call, defendant Linthwaite stated that "suspension mass cytometry unit placements in the Americas fell short of [the Company's] projections," and defendant Jog disclosed that Fluidigm "continued to experience delays in mass cytometry instrument orders in the third quarter similar to the previous quarter primarily due to longer sales cycles."

30.     On this news, the Company's share price fell $2.60, or 51%, to close at $2.51 per share on November 6, 2019, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Fluidigm securities between February 7, 2019 and November 5, 2019, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Fluidigm's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Fluidigm shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Fluidigm or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Fluidigm; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

36.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.   There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

37.     The market for Fluidigm's securities was open, well-developed and efficient at all relevant times.   As a result of these materially false and/or misleading statements, and/or failures to disclose, Fluidigm's securities traded at artificially inflated prices during the Class Period.   Plaintiff and other members of the Class purchased or otherwise acquired Fluidigm's securities relying upon

the integrity of the market price of the Company's securities and market information relating to Fluidigm, and have been damaged thereby.

38.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Fluidigm's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Fluidigm's business, operations, and prospects as alleged herein.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Fluidigm's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

40.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41.     During the Class Period, Plaintiff and the Class purchased Fluidigm's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

42.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Fluidigm, their control over, and/or receipt and/or modification of Fluidigm's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Fluidigm, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

43.     The market for Fluidigm's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Fluidigm's securities traded at artificially inflated prices during the Class Period.  On March 19, 2019, the Company's share price closed at a Class Period high of $14.35 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Fluidigm's securities and market information relating to Fluidigm, and have been damaged thereby.

44.     During the Class Period, the artificial inflation of Fluidigm's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Fluidigm's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Fluidigm and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company

shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45.     At all relevant times, the market for Fluidigm's securities was an efficient market for the following reasons, among others:

(a)     Fluidigm shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Fluidigm filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Fluidigm regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Fluidigm was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

46.     As a result of the foregoing, the market for Fluidigm's securities promptly digested current information regarding Fluidigm from all publicly available sources and reflected such information in Fluidigm's share price. Under these circumstances, all purchasers of Fluidigm's securities during the Class Period suffered similar injury through their purchase of Fluidigm's securities at artificially inflated prices and a presumption of reliance applies.

47.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.   Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.

All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

48.  The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Fluidigm who knew that the statement was false when made.

## FIRST CLAIM

**Violation of Section 10(b) of The Exchange Act and
Rule 10b-5 Promulgated Thereunder
Against All Defendants**

49.  Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50.  During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Fluidigm's securities at artificially inflated prices.  In furtherance

of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

51.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Fluidigm's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Fluidigm's financial well-being and prospects, as specified herein.

53.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Fluidigm's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Fluidigm and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

54.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports;

(iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

55.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Fluidigm's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Fluidigm's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Fluidigm's securities during the Class Period at artificially high prices and were damaged thereby.

57.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other

members of the Class and the marketplace known the truth regarding the problems that Fluidigm

was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class

would not have purchased or otherwise acquired their Fluidigm securities, or, if they had acquired

such securities during the Class Period, they would not have done so at the artificially inflated prices

which they paid.

58.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act

and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the

other members of the Class suffered damages in connection with their respective purchases and

sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

60.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully

set forth herein.

61.     Individual Defendants acted as controlling persons of Fluidigm within the meaning

of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and

their ownership and contractual rights, participation in, and/or awareness of the Company's

operations and intimate knowledge of the false financial statements filed by the Company with the

SEC and disseminated to the investing public, Individual Defendants had the power to influence and

control and did influence and control, directly or indirectly, the decision-making of the Company,

including the content and dissemination of the various statements which Plaintiff contends are false

and misleading. Individual Defendants were provided with or had unlimited access to copies of the

Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be

misleading prior to and/or shortly after these statements were issued and had the ability to prevent

the issuance of the statements or cause the statements to be corrected.

62.     In particular, Individual Defendants had direct and supervisory involvement in the

day-to-day operations of the Company and, therefore, had the power to control or influence the

particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Fluidigm and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED:  September 21, 2020                    **GLANCY PRONGAY & MURRAY LLP**

By:  _s/ Charles H. Linehan_
Robert V. Prongay
Charles Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff Reena Saintjermain*

## SWORN CERTIFICATION OF PLAINTIFF

Fluidigm Corporation, **SECURITIES LITIGATION**

I, _Reena Saintjermain_____, certify:

1. I have reviewed the complaint and authorized its filing and/or adopted its allegations.

2. I did not purchase Fluidigm Corporation, the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Fluidigm Corporation, during the class period set forth in the Complaint are as follows:

    See Attached Transactions

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

    ☐ Check here if you are a current employee or former employee of the defendant Company.

    I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: ___9/17/2020_____

DocuSigned by:

B48AA3FA9114475...

Reena Saintjermain

**Reena Saintjermain's Transactions in Fluidigm Corporation (FLDM)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 4/12/2019 | Bought | 15 | $13.8700 |