UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

REENA SAINT JERMAIN,

            Plaintiff,

    v.

FLUIDIGM CORPORATION, et al.,

            Defendants.

Case No.  20-cv-06617-PJH

**ORDER APPOINTING LEAD PLAINTIFF AND LEAD PLAINTIFF'S COUNSEL**

Re: Dkt. Nos. 14, 18, 19

      This is a securities fraud putative class action.  Named plaintiff Reena Saint Jermain alleges that she bought shares of stock in Fluidigm Corporation ("Fluidigm"), in reliance on false or misleading statements made by defendant, and that she suffered damages when the price of the stock fell after Fluidigm's true financial condition became apparent.

      The Private Securities Litigation Reform Act ("PSLRA") provides that the district court shall select one or more lead plaintiffs to prosecute the action on behalf of the class.  15 U.S.C. § 78u-4(a)(3)(B)(i).  The lead plaintiff or plaintiffs, in turn, select lead counsel.  15 U.S.C. § 78u-4(a)(3)(B)(v).  This matter is fully briefed and suitable for decision without oral argument.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

      On September 21, 2020, named plaintiff filed a class action complaint ("Compl.") on behalf of persons and entities that purchased or otherwise acquired Fluidigm

United States District Court
Northern District of California

securities between February 7, 2019 and November 5, 2019, the class period.  Dkt. 1, ¶ 1.  Fluidigm manufactures and markets products and services that are used by researchers to study health and disease, identify biomarkers, and accelerate the development of therapies.  Id. ¶ 2.

On August 1, 2019, Fluidigm reported second quarter 2019 revenue of $28.2 million, below analysts' expected revenue of $32 million.  Id. ¶ 3.  The following day, the company's share price fell $4.10 or 34% in trading and closed at $8.05 per share.  Id. ¶ 4. On November 5, 2019, the company reported third quarter 2019 revenue declined 8.5% year-over-year.  Id. ¶ 5.  The next day, the company's share price fell $2.60 or 51% in trading and closed at $2.51 per share.  Id. ¶ 6.

Plaintiff alleges that defendants Fluidigm, Stephen Linthwaite (the company's CEO), and Vikram Jog (the company's CFO) (collectively, "defendants") made materially false or misleading statements and failed to disclose material adverse facts about the company's business, operations, and prospects.  Id. ¶ 7.

The same day she filed the complaint, plaintiff published a notice via Business Wire advising class members of the putative class action.  Dkt. 9.  On November 20, 2020, three different movants filed the present motions to appoint lead plaintiff and lead counsel.  First, movant Prakash Patel ("Patel") filed a motion stating that he lost approximately $397.29 in connection with purchases of Fluidigm securities during the class period.  Dkt. 14 at 5.  Second, named plaintiff Reena Saint Jermain, along with Patrice Saint Jermain, ("Saint Jermain") filed a motion stating that they lost approximately $696.10 in Fluidigm securities during the class period.  Dkt. 18 at 5; Dkt. 20-3 at 2. Finally, movant Kwok Kong ("Kong") filed a motion asserting that he lost approximately $87,302.88 in Fluidigm securities during the class period.  Dkt. 19 at 6.

Subsequent to these three motions, the Saint Jermain movants filed a statement of non-opposition, acknowledging Kong's apparent larger financial interest.  Dkt. 27. Kong filed an opposition to the other two movants based on his larger financial interest, Dkt. 26, and Patel has filed no opposition.  Finally, defendants have filed a statement that

they take no position as to whom the court should appoint as lead plaintiff or lead counsel but oppose the legal and factual contentions set forth in the movants' briefs.  Dkt. 28 at 2.

### DISCUSSION

**A.    Legal Standard**

The PSLRA provides that within 20 days after the date on which a securities class action complaint is filed,

> the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Any class member, regardless of whether he or she has filed a complaint, may move for appointment as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  Within 90 days of the published notice, "the court . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  Id.

In selecting a lead plaintiff, the court must adopt a presumption that the most adequate plaintiff in any private action is the person or group of persons that—

> (aa) has either filed the complaint or made a motion [for designation as lead plaintiff];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff— (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to

United States District Court
Northern District of California

unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Ninth Circuit has characterized the PSLRA as "provid[ing] a simple three-step process for identifying the lead plaintiff" in a securities fraud case.  In re Cavanaugh, 306 F.3d 726, 729 (9th Cir. 2002).  The first step consists of publicizing the pendency of the action, the claims made, and the purported class period.  Id.  In the second step, the district court considers "the losses allegedly suffered by the various plaintiffs" before selecting a "presumptively most adequate plaintiff."  Id. at 729–30.  The court must view "the one who 'has the largest financial interest in the relief sought by the class' and [who] 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure'" as the "presumptive lead plaintiff."  Id. at 730 (citation omitted).  At the third step, the court must "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements."  Id.

The Cavanaugh court cautioned that applying the statutory scheme

> provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case . . . . So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.

Id. at 732 (footnote omitted).

**B.    Analysis**

**1.    Appointment of Lead Plaintiff**

In the present case, there is no dispute that plaintiff Saint Jermain complied with the publication requirement and the lead plaintiff motions were all filed no later than 60 days following the published notice in this action.  There is also no dispute that one plaintiff, Kong, claims a substantially greater total loss than do the other two plaintiffs.  See Dkt. 26 at 2.  Thus, the first question is whether Kong has demonstrated the "largest financial interest in the relief sought by the class."

/ / /

### a.   Largest Financial Interest

The PSLRA provides no guidance concerning the method of ascertaining which plaintiff has the "largest financial interest." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Nor has the Ninth Circuit set forth any mandatory formula to be used when calculating financial interest; the only criteria is that the method be rational and consistently applied. See Cavanaugh, 306 F.3d at 730 n.4 ("[T]he court may select accounting methods that are both rational and consistently applied.").

There are several methods used by courts in this district. See Mulligan v. Impax Labs., Inc., 2013 WL 3354420, at *4–6 (N.D. Cal. July 2, 2013) (summarizing methods). For example, one category measures financial interest by the actual economic losses suffered. In re Lyft Sec. Litig., 2020 WL 1043628, at *3 (N.D. Cal. Mar. 4, 2020) (citing Perlmutter v. Intuitive Surgical, Inc., 2011 WL 566814, at *3 (N.D. Cal. Feb. 15, 2011)). Other courts have equated largest financial interest with the amount of potential recovery. See In re Critical Path, Inc. Sec. Litig., 156 F. Supp. 2d 1102, 1107–08 (N.D. Cal. 2001); In re Network Assocs., Inc., Sec. Litig., 76 F. Supp. 2d 1017, 1030 (N.D. Cal. 1999). As noted by the district court in Hurst v. Enphase Energy, Inc., 2020 WL 7025085, at *4 (N.D. Cal. Nov. 30, 2020), the Supreme Court's decision in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 346 (2005), and the Ninth Circuit's opinion applying Dura in Metzler Investment GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1063 (9th Cir. 2008), indicate that not all losses incurred during a class period will be compensable. Dura, 544 U.S. at 346, requires plaintiffs to prove the traditional elements of causation and loss; district courts have interpreted this holding as favoring the recoverable loss method, which requires recoverable losses to be traceable to the alleged fraud instead of ordinary market forces, see Hurst, 2020 WL 7025085, at *4; Perlmutter, 2011 WL 566814, at *6.

Under the recoverable damages method, there are further divisions in how to calculate the recoverable loss. Some courts "determine the number of net shares purchased during the class period and then supplement this calculation with losses

1    suffered as a result of selling shared during the class period." Perlmutter, 2011 WL

2    566814, at *6 (citing In re Silicon Storage Tech., Inc., 2005 U.S. Dist. LEXIS 45246, at

3    *21–22 (N.D. Cal. May 3, 2005); In re Critical Path, 156 F. Supp. 2d at 1107–08).

4    Because no shares were sold by any of the movants in this case, the second "retained

5    shared method" is more appropriate.  This method evaluates "financial interest based on

6    shares purchased during the class period that were retained as of the last day of the

7    class period." Mulligan, 2013 WL 3354420, at *5 (citing Eichenholtz v. Verifone Holdings,

8    Inc., 2008 WL 3925289, at *3–4 (N.D. Cal. Aug. 22, 2008)).  In this method, if a share is

9    not sold within the class period, "the loss is to be measured using an average of the daily

10   closing price of [Fluidigm] stock during the 90-day period beginning [November 6, 2019]."

11   Eichenholtz, 2008 WL 3925289, at *4.

12          Here, it is evident that no matter which method is used, Kong's loss far exceeds

13   that of the other movants and no other movant challenges his method or his loss.  Since

14   each movant uses the retained shares method and no movant sold his or her shares

15   during the relevant 90-day period, it is appropriate in this case.  The movants calculate

16   the 90-day average closing price between November 6, 2019 and February 3, 2020 as

17   $3.1608.  E.g., Dkt. 20-3.  Based on this price, the movants calculate their losses as

18   follows:

|               | Shares | Price Per Share at Purchase | Total Bought | Retained Value | Balance      |
|---------------|--------|-----------------------------|--------------|----------------|--------------|
| Saint Jermain | 65     | $13.87                      | $901.50      | $205.45        | ($696.05)    |
| Kong          | 9,750  | $11.89                      | $115,927.50  | $30,817.80     | ($87,302.88) |
|               | 60     | $11.74                      | $704.40      | $189.65        |              |
|               | 1,500  | $4.28                       | $6,420.00    | $4,741.2       |              |
| Patel         | 250    | $4.75                       | $1,187.50    | $790.21        | ($397.29)    |

See Dkts. 15-3; 20-3; 25-2.  Clearly, movant Kong has the largest financial interest.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

### b.    Typicality and Adequacy

Once the court has determined the plaintiff with the greatest financial stake in the lawsuit, it "must then focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" Cavanaugh, 306 F.3d at 730.  The presumption that a plaintiff is the most adequate plaintiff can be rebutted only by a showing either that the plaintiff will not adequately and fairly protect the class, or by a showing that the plaintiff is subject to unique defenses and is therefore incapable of adequately representing the class.  See id. at 729–30.

The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citing Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  "The adequacy requirement is met if there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation." Hurst, 2020 WL 7025085, at *5 (citing Fed. R. Civ. P. 23(a)(4); Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003)).

Kong argues that he satisfies Rule 23's typicality and adequacy requirements. With respect to typicality, he contends that he acquired Fluidigm securities during the class period at prices artificially inflated by defendants' materially false and misleading statements and was therefore damaged.  Dkt. 19 at 7.  Kong avers that his claims are typical, if not identical to, those of other class members because he suffered similar losses, which resulted from defendants' course of conduct.  Id.  As to adequacy, Kong contends that there is no evidence of antagonism between his interests and those of the class and he has a significant interest in prosecuting the action based on his large financial losses.  Id. at 8.  Further, Kong has retained counsel experienced in prosecuting securities class actions.  Id.

United States District Court
Northern District of California

The court finds that Kong meets the typicality and adequacy requirements.  There is no evidence that he is antagonistic to class members and he has selected counsel with experience in prosecuting securities class action cases.  See Dkt. 25-4.  Kong's claims are presumptively typical of the putative class.  Therefore, the court finds that Kong is the presumptive lead plaintiff.

The PSLRA requires the court to "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that [he] satisfies Rule 23's typicality and adequacy requirements."  Cavanaugh, 306 F.3d at 730 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).  No other movant challenges Kong's status as presumptive lead plaintiff.

### 2.    Appointment of Lead Counsel

The PSLRA mandates that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u–4(a)(3)(B)(v).  "Although this power is subject to court approval and is therefore not absolute, it plainly belongs to the lead plaintiff."  Cohen v. U.S. Dist. Court, 586 F.3d 703, 709 (9th Cir. 2009) (citations omitted).  "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice."  Id. at 712.

Here, no party has objected to Kong's selection of Brager Eagel & Squire, P.C. as lead counsel.  Having reviewed the firm's resume, the court finds lead plaintiff's choice to be reasonable.  The court approves Kong's selection of lead counsel.

## CONCLUSION

In accordance with the foregoing, the court GRANTS Kong's motion and DENIES the Saint Jermain and Patel motions.  The court hereby appoints Kwok Kong to serve as lead plaintiff in this action.  The court also approves Kong's choice of counsel, the law firm of Brager Eagel & Squire, P.C., to serve as lead counsel.

**IT IS SO ORDERED.**

Dated: December 14, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge