UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KWOK KONG, et al.,

               Plaintiffs,

    v.

FLUIDIGM CORPORATION, et al.,

               Defendants.

Case No.  20-cv-06617-PJH

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS**

Re: Dkt. No. 50

Defendants' motion to dismiss plaintiff's second amended complaint ("SAC") came on for hearing before this court on February 10, 2022.  Lead plaintiff appeared through his counsel, Lawrence Eagel, Marion Passmore, and Melissa Fortunato.  Defendants appeared through their counsel, Ignacio Salcedo and Diane Walters.  Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby **GRANTS** defendants' motion, for the following reasons.

## I.    BACKGROUND

Defendant Fluidigm Corporation ("Fluidigm") manufactures and markets products and services that are used by researchers to study health and disease, identify biomarkers, and accelerate the development of therapies. Fluidigm is incorporated in Delaware, headquartered in South San Francisco, and publicly traded on Nasdaq. Defendant Stephen Christopher Linthwaite has served as Fluidigm's President, CEO, and member of the Board of Directors since October 2016. Defendant Vikram Jog has served as Fluidigm's CFO since February 2008. Together, Linthwaite and Jog are referred to as

United States District Court
Northern District of California

the "individual defendants."  Lead plaintiff Kwok Kong ("plaintiff") seeks to represent a class on behalf of persons and entities that purchased or otherwise acquired Fluidigm securities during the proposed class period, between February 9, 2019, and November 5, 2019.

### A.   Narrative

Plaintiff alleges that defendants made materially false or misleading statements and failed to disclose material adverse facts about the company's business, operations, and prospects.  SAC ¶ 3.  During the proposed class period, plaintiff contends, defendants' statements misled the market, artificially inflating the price of Fluidigm securities and leading to plaintiff's losses.  SAC ¶¶ 135-41.

Fluidigm has two main categories of products and services: mass cytometry and microfluidics (also known as genomics).  SAC ¶¶ 2, 26, 27.  Since 2017, the company's revenues from microfluidics decreased and Fluidigm relied more heavily on increasing revenues from mass cytometry.  SAC ¶¶ 3, 35-43.

Plaintiff alleges that defendants knew, but failed to disclose, that sales of Fluidigm's mass cytometry instruments were expected to decline in the third and fourth quarters of 2019.  Plaintiff alleges that defendants were able to accurately forecast the sales pipeline two to four quarters in advance because the ordering sales cycle for the instruments was typically six to 12 months.  SAC ¶¶ 4, 45-51.  According to confidential witnesses ("CWs"), as a result of the lengthy sales cycle and the company's yearly forecasting process for 2019, in the third and fourth quarters of 2018, defendants were fully informed of the fact that mass cytometry sales for the second half of 2019 would abruptly decrease.  SAC ¶¶ 45-51.

On March 18, 2019, Fluidigm filed its 2018 annual report on SEC Form 10-K, with detailed disclosures concerning the risks it faced.  SAC ¶ 67.  Among the cautions expressed, the report highlighted varied quarterly financial results and revenue growth rates, fluctuations in demand for the company's products, changes in customer budget cycles and capital spending, new product introductions and enhancements by Fluidigm

United States District Court
Northern District of California

and its competitors, and a complex and lengthy sales cycle. Walters Decl. Ex. 3 at 13-14 (Dkt. 50-1 at 48-49).

As expected, revenues for the first quarter of 2019 were positive and the company met its projections for the quarter. SAC ¶¶ 7, 70, 83. On May 2, 2019, Fluidigm announced results for 1Q2019 and provided revenue guidance for 2Q2019. SAC ¶ 70. During a conference call that same day, Linthwaite noted that Fluidigm still had "instrument placements that could be lumpy from cycle to cycle." SAC ¶ 76. On May 7, 2019, Fluidigm filed its quarterly report for 1Q2019 on SEC Form 10-Q. SAC ¶ 78. The Form 10-Q's risk disclosures expressly warned of, among other things, fluctuations in results and growth rates; variable, complex, and lengthy sales cycles; and competition. Walters Decl. Ex. 6 at 34-35 (Dkt. 50-1 at 140-41).

But plaintiffs allege that internal reporting during the early part of 2019 confirmed the prior fall's projections that sales would decline during the second half of 2019. SAC ¶¶ 52-61. CW3, who oversaw North American mass cytometry sales and marketing for the company, presented to defendants an updated forecast showing the anticipated decline in January 2019. SAC ¶ 52. CW1 confirmed that declining sales were always discussed during weekly meetings attended by the individual defendants in 2019. SAC ¶ 53.

The company's reported revenues from the second quarter of 2019 fell short of analysts' projections, resulting in a 33.74% drop in stock price. SAC ¶¶ 8-9, 83-84. On August 7, 2019, Fluidigm filed its 2Q2019 Form 10-Q, again warning of fluctuations in results and growth rates; lengthy sales cycles; and competition. SAC ¶ 98; Walters Decl. Ex. 9 at 34-35 (Dkt. 50-1 at 226-27). According to plaintiff, defendants did not report what was then known—that they knew mass cytometry revenue for the balance of 2019 was going to decline or that customers were extending the already lengthy sales cycle with some not purchasing at all. SAC ¶¶ 10, 54-55, 85-99.

The 3Q19 earnings report revealed a revenue decline of 8.5% year-over-year, primarily due to the loss of mass cytometry sales. SAC ¶¶ 11, 100-03. This represented

United States District Court
Northern District of California

a 2% miss from the guidance issued the previous quarter.  <u>Compare</u> SAC ¶83 (3Q2019 guidance range of $27-$30 million), with SAC ¶ 101 (reported revenue of $26.5 million). On this news, the company's stock price plummeted 50.88% in one day, and 80.82% from the date of the first partial disclosure on August 1, 2019, as investors were finally informed of the lesser mass cytometry sales demand and revenue.  SAC ¶¶ 12, 104. The mass cytometry sales decline continued after the Class Period, as internally expected, during the fourth quarter of 2019 and throughout 2020 with a first quarter 2020 mass cytometry product revenue decline of 26% year over year.  SAC ¶¶ 13, 106.

Plaintiff contends that defendants knew that mass cytometry sales would drop for the second half of 2019 not only from multiple written reports (SAC ¶¶ 59, 117-23), but actual receipt, review, and related discussions regarding those reports with employees (SAC ¶¶ 45-50, 52-53, 117-18, 121).  Plaintiff alleges that defendants were intimately involved with the sales of the company's most significant source of revenue.  SAC ¶¶ 51, 109-116.

Plaintiff specifically alleges that defendants' misleading statements anticipating the strength of sales in the second half of 2019 were made with scienter.  First, the individual defendants acted with scienter where they knowingly or recklessly disregarded the information then available.  SAC ¶¶ 107-08.  Second, plaintiff alleges that scienter can be inferred where the individual defendants knew of Fluidigm's "core operations" but failed to disclose the realities of those operations, misleading the public.  SAC ¶¶ 109-16.  Even more specifically, the individual defendants knew of the decreased sales given their day-to-day operational control and intimate knowledge of what had become the company's most important line of business.  SAC ¶ 111.  Reports from CWs reveal consistent internal discussion of decreasing mass cytometry sales, the ready availability of sales information to the individual defendants through Salesforce, and the internal presentations anticipating decreases in sales.  SAC ¶¶ 118-121.

Plaintiff additionally alleges that defendants were motivated to maintain a façade of financial health as the company funded its operations through equity and debt

4

1   offerings, including a December 2018 public offering netting $59.1 million and a March

2   18, 2019, filing of a Form S-3ASR, indicating another imminent public offering which

3   would need strong positive results to be profitable.  SAC ¶¶ 124-32.  Defendants were

4   motivated to conceal the negative information regarding mass cytometry, plaintiff

5   suggests, in order to maximize the potential influx of capital by giving a false impression

6   of the sales pipeline.  SAC ¶¶ 131-32.

7       Lastly, plaintiff alleges that "corporate scienter" may be imputed to Fluidigm as an

8   entity, where its corporate officers (the individual defendants) acted with authority to

9   speak on behalf of the company through the public statements and SEC filings.  SAC

10  ¶¶ 133-34.

11      As with the first amended complaint, plaintiff specifically alleges loss and class

12  claims.  See SAC ¶¶ 138-40, 142-146.

13      **B.    Procedural History**

14      The original complaint in this putative class action was filed on September 9, 2021,

15  by Reena Saintjermain.  Dkt. 1.  Saintjermain properly issued public notice of the lawsuit,

16  and the court thereafter appointed Kwok Kong as lead plaintiff by order entered

17  December 14, 2020.  Dkt. 31.

18      The first amended complaint was filed on February 19, 2021.  Dkt. 36.  Defendants

19  filed a motion to dismiss that complaint on April 5, 2021.  Dkt. 39.  Following briefing and

20  hearing, the court granted that motion with leave to amend on August 4, 2021.  Dkt. 46.

21      Plaintiff filed the now-operative second amended complaint on September 14,

22  2021.  Dkt. 49.  It identifies the same two causes of action: (1) violations of Section 10(b)

23  of the Exchange Act and SEC Rule 10b-5 promulgated thereunder (against all

24  defendants), and (2) violations of Section 20(a) of the Exchange Act (against the

25  individual defendants).

26      Defendants filed the instant motion to dismiss in response based on the Private

27  Securities Litigation Reform Act of 1995 ("PSLRA") and Federal Rules of Civil Procedure

28  12(b)(6), 8, and 9(b).  Dkt. 50.  Additionally, they filed a "notice of incorporation by

1    reference and request for judicial notice." Dkt. 51.  Plaintiff opposes the motion to

2    dismiss, arguing that the amended complaint sufficiently pleads securities fraud following

3    changes made in response to the court's initial order granting dismissal.

4    **II.    REQUEST FOR JUDICIAL NOTICE**

5         In connection with their motion to dismiss, defendants request judicial notice of

6    press releases, transcripts of quarterly earnings calls, and reports submitted to the SEC

7    by Fluidigm, all from the putative class period.  These documents appear to be the same

8    as those for which the court granted judicial notice in the first round of briefing, along with

9    a few additions.

10        "Although generally the scope of review on a motion to dismiss for failure to state a

11   claim is limited to the Complaint, a court may consider evidence on which the complaint

12   necessarily relies if: (1) the complaint refers to the document; (2) the document is central

13   to the plaintiffs' claim; and (3) no party questions the authenticity of the copy attached to

14   the 12(b)(6) motion." Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010)

15   (internal quotation marks and citations omitted).  The court may "treat such a document

16   as 'part of the complaint, and thus may assume that its contents are true for purposes of

17   a motion to dismiss under Rule 12(b)(6).'" Marder v. Lopez, 450 F.3d 445, 448 (9th Cir.

18   2006) (quoting United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003)).

19        Here, plaintiff does not oppose defendants' request related to any of the

20   documents.  Because their authenticity is not disputed, and because courts routinely take

21   judicial notice of these types of documents, judicial notice of these materials is

22   appropriate.

23        Though plaintiff does not oppose judicial notice or incorporation by reference of

24   any particular exhibit submitted by defendants, he opposes defendants' proffered

25   materials for similar reasons to those identified in the first round of briefing.  He reiterates

26   that defendants' flood of documents should not be considered by the court for the sole

27   purpose of creating a countervailing narrative to plaintiff's amended pleading.  "Orexigen

28   expressly prohibits what Defendants do here – 'it is improper to assume the truth of an

incorporated document if such assumptions only serve to dispute facts stated in a wellpleaded complaint.'"  Dkt. 54 at 3 (quoting Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018) (admonishing "the unscrupulous use of extrinsic documents to resolve competing theories")).  The court agrees.  To the extent any facts contained within these documents are reasonably disputed, the court does not take judicial notice of those facts.  See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002)).

**III.    MOTION TO DISMISS**

**A.    Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court accepts as true the factual allegations in the complaint, legally conclusory statements not supported by actual factual allegations need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' "  Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Where dismissal is warranted, it is generally without

United States District Court
Northern District of California

1  prejudice, unless it is clear the complaint cannot be saved by any amendment.  Sparling

2  v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

3      Securities' fraud claims under § 10(b) of the Securities Exchange Act of 1934 and

4  Securities Exchange Commission Rule 10b-5 promulgated thereunder must "meet the

5  higher, [more] exacting pleading standards of Federal Rule of Civil Procedure 9(b) and

6  the Private Securities Litigation Reform Act (PSLRA)."  Or. Pub. Emp. Ret. Fund v. Apollo

7  Group Inc., 774 F.3d 598, 603-04 (9th Cir. 2014).  Under Rule 9(b), claims alleging fraud

8  are subject to a heightened pleading requirement—that a party "state with particularity

9  the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  And private

10  securities fraud complaints are subject to the "more exacting pleading requirements" of

11  the PSLRA, which require that both falsity and scienter be pled with particularity.  Zucco

12  Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009).

13      To state a claim for securities fraud under § 10(b) and Rule 10b-5, a plaintiff must

14  allege particularized facts showing (1) a material misrepresentation or omission of fact;

15  (2) made with scienter; (3) a connection with the purchase or sale of a security; (4)

16  reliance or "transaction causation;" (5) economic loss; and (6) loss causation (causal

17  connection between the material misrepresentation and the loss).  Dura Pharms., Inc. v.

18  Broudo, 544 U.S. 336, 341-42 (2005); see also Matrixx Initiatives, Inc. v. Siracusano, 563

19  U.S. 27, 37-38 (2011).  In order to "adequately plead scienter under the PSLRA, the

20  complaint must state with particularity facts giving rise to a strong inference that the

21  defendant acted with the required state of mind."  Id. (internal quotation marks omitted).

22      **B.    Analysis**

23      Plaintiff alleges two causes of action: (1) violations of § 10(b) of the Exchange Act

24  and SEC Rule 10b-5 promulgated thereunder (against all defendants), and (2) violations

25  of Section 20(a) of the Exchange Act (against the individual defendants).

26      Defendants do not argue that plaintiff failed to allege the following four elements:

27  (1) the connection between the misrepresentations or omissions and the purchase or

28  sale of a security, (2) reliance, (3) economic loss, or (4) loss causation.  Defendants

1   again contend that plaintiff failed to allege (1) material misrepresentations or omissions

2   (falsity) and (2) scienter.  Much of plaintiff's amendments in the SAC focus on the falsity

3   element—that defendants' statements touting a strong sales pipeline for mass cytometry

4   were allegedly misleading when they knew since late 2018 that mass cytometry sales

5   were going to drop at the end of 2019.  The court addressed falsity at length in its prior

6   order and does not endeavor to repeat that assessment here.  Even if the court accepts

7   plaintiff's amendments regarding falsity as sufficient to support a claim for securities

8   fraud, the allegations regarding scienter still fall short.  The court thus focuses its analysis

9   on the element of scienter, particularly the issue of whether plaintiff's scienter allegations

10  fail holistically.  The court's assessment of the scienter element of plaintiff's § 10(b) claim

11  impacts the viability of plaintiff's § 20(a) claim, so the two claims are considered in turn.

12          **1.      Claim 1 – Section 10(b)**

13          A complaint alleging securities fraud under § 10(b) must "state with particularity

14  facts giving rise to a strong inference that the defendant acted" with scienter.  See 15

15  U.S.C. § 78u-4(b)(2)(A); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 321

16  (2007).  Scienter is "a mental state embracing intent to deceive, manipulate, or defraud."

17  Tellabs, 551 U.S. at 308; see also Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d

18  1049, 1061 (9th Cir. 2008).  To demonstrate scienter, a complaint must allege that the

19  defendants made "false or misleading statements either intentionally or with deliberate

20  recklessness."  See Zucco, 552 F.3d at 991; Ronconi v. Larkin, 253 F.3d 423, 432 (9th

21  Cir. 2001).  In contrast to the particularity considered necessary for falsity, "The Supreme

22  Court has emphasized that courts 'must review all the allegations holistically' when

23  determining whether scienter has been sufficiently pled.  The relevant inquiry is 'whether

24  all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not

25  whether any individual allegation, scrutinized in isolation, meets that standard.'"  Reese v.

26  Malone, 747 F.3d 557, 569 (9th Cir. 2014) (citing Tellabs, 551 U.S. at 323).

27          As the Ninth Circuit has recognized, "a lack of stock sales can detract from a

28  scienter finding."  Webb v. SolarCity Corp., 884 F.3d 844, 856 (9th Cir. 2018); Eckert v.

Paypal Holdings, Inc., 831 F. App'x 366, 367 (9th Cir. 2020) (plaintiff's failure to plead a compelling inference of scienter was "underscored by the absence of any allegation in the complaint that any defendant sold stock during the relevant time period").  In fact, "[t]he absence of insider trading by a defendant is highly relevant and undermines any inference of scienter."  In re Pixar Sec. Litig., 450 F. Supp. 2d 1096, 1107 (N.D. Cal. 2006); see also In re Rigel Pharms., Inc. Sec. Litig., 697 F.3d 869, 884 (9th Cir. 2012); In re Dynavax Sec. Litig., No. 4:16-cv-06690-YGR, 2018 WL 2554472, at *9 (N.D. Cal. June 4, 2018).

Here, there are no allegations of insider trading or suspicious stock sales.  To the contrary, Mr. Linthwaite purchased Fluidigm shares in August 2019 (Dkt. 50-1 at 275), undermining an inference of scienter.  See In re Worlds of Wonder Sec. Litig., 35 F.3d 1407, 1424-25 (9th Cir. 1994) (if defendants knew a company's stock price was overvalued, they "probably would have bailed out" rather than incur the same "losses as . . . Plaintiffs"), superseded by statute on other grounds; 15 U.S.C. § 78u-4(b)(2).  Plaintiff argued at the hearing that Linthwaite's purchase somehow demonstrates malintent, but such conjecture is not supported by either case authority or the allegations in the SAC.  The lack of insider trading and the purchase of company stock weigh against scienter.

Plaintiff avers that the defendants were motivated to conceal faltering sales demand in order to raise funds through a potential public offering.  Defendants filed with the SEC a Form S-3ASR on March 18, 2019, which plaintiff alleges indicates an imminent public offering, giving defendants motive to omit the known material adverse facts regarding predicted declining mass cytometry sales.  SAC ¶¶ 131-32.  In response, defendants point to a recent order from this court that noted, "[t]he Ninth Circuit has generally rejected motive allegations to support scienter where they are premised on 'routine corporate objectives such as the desire to obtain good financing and expand.'"  In re Fastly, Inc. Sec. Litig., No. 20-cv-06024-PJH, 2021 WL 5494249, *18 (N.D. Cal. Nov. 23, 2021) (quoting Webb, 884 F.3d at 856).  Defendants are correct—even accepting the truth of plaintiff's allegation regarding their motivation to boost fundraising prospects,

defendants' motivation to raise capital does not support a determination of scienter.  In re Rigel, 697 F.3d at 884 ("allegations of routine corporate objectives such as the desire to obtain good financing and expand are not, without more, sufficient to allege scienter; to hold otherwise would support a finding of scienter for any company that seeks to enhance its business prospects.").

Taking all of the SAC's allegations into consideration, plaintiff falls short of establishing a strong inference of scienter.  The court accepts for this discussion the knowing falsity of defendants' statements about the mass cytometry sales pipeline and the alleged motive to boost upcoming fundraising.  However, defendants' routine fundraising objectives and their lack of insider trading, combined with Linthwaite's purchase of stock during the class period, all severely undercut any inference of scienter when viewed holistically.  The overall inference of scienter is therefore insufficient to reach the level of "strong" necessary to state a claim for securities fraud.  The court dismisses the claim for violation of § 10(b) on this basis.

### 2.    Second Cause of Action – § 20

Congress has established liability in § 20(a) for "[e]very person who, directly or indirectly, controls any person liable" for violations of the securities laws.  15 U.S.C. § 78t(a).  To establish a prima facie case under § 20(a), a plaintiff must prove: (1) "a primary violation of federal securities law;" and (2) "that the defendant exercised actual power or control over the primary violator."  Howard v. Everex Sys., Inc., 228 F.3d 1057, 1065 (9th Cir. 2000).

Because plaintiff has failed to plead a primary securities law violation, plaintiff has also failed to plead a violation of § 20(a).  See Cutera, 610 F.3d at 1113 n.6 (holding that § 20(a) claim was properly dismissed because § 10(b) claim had already been dismissed).  Accordingly, plaintiff also fails to state a claim under § 20(a).

### 3.    Leave to Amend

Courts regularly grant leave to amend when dismissing a complaint for failure to state a claim unless they determine "that the pleading could not possibly be cured by the

1   allegation of other facts." <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000); <u>see also</u>

2   <u>Zucco</u>, 552 F.3d at 1007 (finding plaintiff's failure to correct deficiencies in second

3   amended complaint as 'a strong indication that the plaintiffs have no additional facts to

4   plead.'").  The court previously dismissed an amended complaint and provided plaintiff

5   the opportunity to cure the deficiencies identified in that order.  Because plaintiff has not

6   remedied the deficiencies related to scienter, an essential element of the fraud claim

7   discussed at length in the previous order, the court finds that amendment would be futile.

8   Therefore, the court dismisses plaintiff's claims without leave to amend.

9   **IV.    CONCLUSION**

10          For the foregoing reasons, the court GRANTS defendants' request for judicial

11   notice as detailed above, and the court GRANTS defendants' motion to dismiss the SAC

12   with prejudice.

13          **IT IS SO ORDERED.**

14   Dated: February 14, 2022

15                                                    <u>*/s/ Phyllis J. Hamilton*</u>
                                                     PHYLLIS J. HAMILTON
16                                                    United States District Judge